Argued and submitted September 12, 1994, decision of the Court of Appeals affirmed on different grounds and judgment of the circuit court affirmed February 2, reconsideration denied March 21, 1995

Karl L. OBERG,
*Respondent on Review,*

*v.*

HONDA MOTOR CO., LTD.;
Honda R&D Co., Ltd.;
and American Honda Motor Co., Inc.,
*Petitioners on Review.*

(CC A8709-05897; CA A61587)
(SC S38436; USSC 93-644)

888 P2d 8

Andrew L. Frey, of Mayer, Brown & Platt, Washington, D.C., argued the cause for petitioners on review. With him on the briefs were Jeffrey R. Brooke and Paul G. Cereghini, of Bowman & Brooke, Phoenix, Arizona, and Thomas W. Brown and James H. Gidley, of Cosgrave, Vergeer & Kester, Portland.

Kathryn H. Clarke, Portland, and William A. Gaylord, Portland, argued the cause for respondent on review. With them on the briefs was Raymond F. Thomas, Portland.

Thomas W. Sondag, of Lane Powell Spears Lubersky, Portland, filed briefs on behalf of *amicus curiae* First Interstate Bank of Oregon, N.A. With him on the briefs were James H. Clarke and Jeffrey M. Batchelor.

Maureen Leonard, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Mildred J. Carmack, of Schwabe, Williamson & Wyatt, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

William L. Hallmark, of Hallmark, Keating & Abbott, P.C., Portland, filed briefs on behalf of *amicus curiae* Senco Products, Inc., an Ohio corporation.

Rives Kistler, Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GRABER, J.

## GRABER, J.

This case is before us on remand from the Supreme Court of the United States. *Honda Motor Co., Ltd. v. Oberg*, 512 US ___, 114 S Ct 2331, 129 L Ed 2d 336 (1994).

## INTRODUCTION

This civil case involves a product liability claim against defendants, who manufactured and sold a three-wheeled all-terrain vehicle (ATV) used by plaintiff. The ATV flipped over backwards while plaintiff was riding it, and plaintiff suffered multiple injuries. A jury returned a verdict in favor of plaintiff, awarding both general and punitive damages. Defendants appealed to the Court of Appeals, which affirmed the judgment. *Oberg v. Honda Motor Co.*, 108 Or App 43, 56, 814 P2d 517 (1991). On review to this court, we also affirmed. 316 Or 263, 289, 851 P2d 1084 (1994). The facts are set forth in more detail in those opinions.

As now pertinent, defendants argued in their earlier appearance before this court that, under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States,[1] an award of punitive damages must be subject to post-verdict judicial review for excessiveness. 316 Or at 275. They reasoned that, because the Oregon Constitution had been interpreted to preclude post-verdict judicial review of an award of punitive damages, the procedure followed by the Oregon courts did not comport with the requirements of federal procedural due process. This court stated that Article VII (Amended), section 3, of the Oregon Constitution,[2] prevents Oregon trial and appellate courts from reviewing awards of punitive damages.[3] *Id.* at 275-76. This court

---

[1] The Fourteenth Amendment to the Constitution of the United States provides in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law[.]"

[2] Article VII (Amended), section 3, of the Oregon Constitution, provides in part:

"In actions at law, where the value in controversy shall exceed $200, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

[3] This court is mindful that Article VII (Amended), section 3, vests authority in this court to determine "what judgment should have been entered in the court

held that, despite that restriction, Oregon's procedure complied with the dictates of federal procedural due process under then-existing Fourteenth Amendment jurisprudence. *Id.* at 283-89.

On *certiorari*, the Supreme Court of the United States reversed. The Supreme Court held that "Oregon's denial of judicial review of punitive damages awards violates the Due Process Clause of the Fourteenth Amendment." *Honda Motor Co., Ltd. v. Oberg*, 114 S Ct at 2341. The Supreme Court went on to state:

> "A decision to punish a tortfeasor by means of an exaction of exemplary damages is an exercise of state power that must comply with the Due Process Clause of the Fourteenth Amendment. The common law practice, the procedures applied by every other State, the strong presumption favoring judicial review that we have applied in other areas of the law, and elementary considerations of justice, all support the conclusion that such a decision should not be committed to the unreviewable discretion of a jury." *Id.* at 2342.

The Supreme Court did not address "the more difficult question of what standard of review is constitutionally required." *Id.* at 2341 n 10. The Supreme Court left that question to us.

On remand, then, our task is twofold. First, we must identify a standard of post-verdict judicial review of awards of punitive damages that complies with the federal constitution. Then, we must apply that standard to the case before us.

Article VII (Amended), section 3, of the Oregon Constitution, quoted in note 2 *ante*, prohibits a court from re-examining a fact tried by a jury unless there is no evidence to support the jury's verdict. In *Van Lom v. Schneiderman*, 187 Or 89, 116, 210 P2d 461 (1949), this court held that an assessment of punitive damages is a question of fact committed to the decision of a jury, to which Article VII (Amended),

---

below." However, because this court has used that authority in rare instances, *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 358, 788 P2d 428 (1990), and because review of punitive damages awards in a court of discretionary review would be impractical, we do not consider further that authority.

section 3, applies.[4] Therefore, a trial or appellate court is prohibited from reviewing an award of punitive damages if there is evidence in the record to support a jury's finding that punitive damages should be awarded. *Id.* at 110-13. It is that aspect of the holding in *Van Lom*, construing Article VII (Amended), section 3, that comes into direct conflict with the decision of the Supreme Court of the United States in this case, concerning the requirements of federal due process. Under the Supremacy Clause,[5] we are bound to follow the requirements of federal due process in the face of that conflict.

On remand, we hold that the standard for post-verdict judicial review of an award of punitive damages is as follows:[6] A jury's award of punitive damages shall not be disturbed when it is within the range that a rational juror would be entitled to award in the light of the record as a whole; the range that a rational juror would be entitled to award depends, in turn, on the statutory and common law factors that allow an award of punitive damages for the specific kind of claim at issue. We also hold that the award of punitive damages in this case was not excessive, when reviewed under the foregoing standard.

## THE STANDARD FOR POST-VERDICT JUDICIAL REVIEW

As discussed above, the Supreme Court of the United States held in *Oberg* that the Due Process Clause of the Fourteenth Amendment requires post-verdict judicial review of awards of punitive damages. 114 S Ct at 2341. In reaching its conclusion, the Supreme Court noted that, "[i]n the federal courts and in every State, except Oregon, judges review the size of damage awards." *Id.* at 2338. The Court

---

[4] The court in *Van Lom* referred to Article VII (Amended), section 3, as "Article VII, section 3." The people adopted Article VII (Amended), section 3, in 1910, by initiative petition.

[5] Article VI of the Constitution of the United States provides in part:

"This Constitution * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

[6] This holding is limited to awards of punitive damages and does not extend to compensatory damages.

then stated that "traditional practice provides a touchstone" for what is required by procedural due process. *Id.* at 2339.

■    The Court's discussion of traditional practice, from the era of George III to "modern practice," describes the proper procedure to be followed when it is asserted that a jury's award of punitive damages is excessive. *Id.* at 2335-38. By contrast, the Court does not spell out what *standard of review* is required by federal procedural due process. Two passages in *Oberg* offer some guidance, however. First, the Court, in rejecting plaintiff's argument that Oregon provided adequate post-verdict review of a jury's award of punitive damages (because a trial judge or an appellate court can overturn an award of punitive damages if there is no evidence to support such an award, or if the jury was improperly instructed before it gave the award), stated:

> "What we are concerned with is the possibility that a guilty defendant may be unjustly punished; evidence of guilt warranting some punishment is not a substitute for evidence providing *at least a rational basis* for the *particular* deprivation of property imposed by the State to deter future wrongdoing." *Id.* at 2339 (emphasis added).

Second, in a footnote, the Court stated:

> "This case does not pose the more difficult question of what standard of review is constitutionally required. Although courts adopting a more deferential approach use different verbal formulations, there may not be much practical difference between review which focuses on 'passion and prejudice,' 'gross excessiveness,' or whether the verdict was 'against the great weight of the evidence.' All of these may be rough equivalents of the standard this Court articulated in *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791-2792, 61 L.Ed.2d 560 (1979) (whether 'no rational trier of fact could have' reached the same verdict)."[7] *Id.* at 2341 n 10.

In those two brief statements, the Supreme Court suggests that a form of post-verdict judicial review that asks

---

[7] *Jackson v. Virginia*, 443 US 307, 99 S Ct 2781, 61 L Ed 2d 560 (1979), addressed the appropriate standard of review in federal habeas corpus proceedings resulting from a claim of insufficient evidence to support a state criminal conviction. The Court stated that "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 US at 324.

whether "a rational basis" exists for the particular amount of punitive damages assessed, or a form of post-verdict judicial review that asks whether a "rational trier of fact" could assess the same award, would meet the requirements of the Due Process Clause. Both of those standards are related to the evidence in the record; some rational nexus must exist between the award and the evidence in the record.

There is a range of punitive damages that a reasonable jury may assess in a given case, and an assessment of damages that exceeds that range results in a deprivation of property that is a substantive due process violation.[8] A court, trial or appellate, reviewing an award of punitive damages thus engages in post-verdict review (a procedural due process safeguard) to ensure that the award is within the permissible range of damages (which is limited by substantive due process concerns).

With the above considerations in mind, we hold that the legal standard to apply to post-verdict judicial review of a jury's award of punitive damages is as follows: Was the award of punitive damages within the range that a rational juror would be entitled to award in the light of the record as a whole? The range that a rational juror is entitled to award depends, in turn, on the statutory and common law factors that the jury is instructed and permitted to consider when awarding punitive damages for a given claim.

## RESOLUTION OF THE PRESENT CASE

■ Although the trial court did not apply our newly announced standard in the first instance here, we choose not to remand this case, for three reasons. First, on remand from the Supreme Court of the United States, this court has

---

[8] The Supreme Court of the United States recognized the existence of such a range. Discussing *Pacific Mutual Life Insurance Co. v. Haslip*, 499 US 1, 111 S Ct 1032, 113 L Ed 2d 1 (1991), and *TXO Production Corp. v. Alliance Resources Corp.*, 509 US___, 113 S Ct 2711, 125 L Ed 2d 366 (1993), the Court in *Oberg*, 114 S Ct at 2335, stated:

"Our recent cases have recognized that the constitution imposes a substantive limit on the size of punitive damage awards. Although they fail to 'draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable,' a majority of the Justices agreed that the Due Process Clause imposes a limit on punitive damage awards. A plurality in *TXO* assented to the proposition that 'grossly excessive' punitive damages would violate due process." (Citations omitted.)

resolved questions of law and has determined how Oregon law will comport with the requirements newly articulated by the Supreme Court. We are in as good a position as would be the trial court to apply a legal standard to the evidence in the record. Second, by applying that new standard to the facts in this case, we may be able to give some guidance to trial courts that will need to follow this standard in the future. Third, the judgment was entered more than five years ago; we see no reason to delay the final resolution of this case any longer.[9]

■ Considering the record as a whole, we hold that the award of punitive damages in this case is within the range that a rational juror would be entitled to award.[10] Our analysis is as follows.

As noted, plaintiff brought a product liability claim against defendants. The substantive criteria to be considered by an Oregon factfinder in deciding whether to make an award of punitive damages in a product liability action and, if so, in setting the award, are set out in ORS 30.925:

> "(1) In a product liability civil action, punitive damages shall not be recoverable unless it is proven by clear and convincing evidence that the party against whom punitive damages is sought has shown wanton disregard for the health, safety and welfare of others.
>
> "(2) During the course of trial, evidence of the defendant's ability to pay shall not be admitted unless and until

---

[9] Our decision to resolve this case here, rather than remand it to the trial court, indicates that an appellate court may conduct post-verdict review, on the merits, of an award of punitive damages, even though the trial court has not done so. We note, therefore, that the Court of Appeals may (when appropriate) conduct such a review of cases that already have been tried and that now are, or will be, on appeal.

The foregoing paragraph should not be read to suggest, however, that the issue may be *raised* for the first time on appeal, without some objection or challenge to an award of punitive damages having been made, on the ground of excessiveness, in the trial court. In this case, there is no question that defendants raised the issue at trial in a timely and appropriate manner. Defendants moved for a directed verdict regarding the punitive damages claim (both at the close of plaintiff's case and at the close of all the evidence), ORCP 60, and moved for judgment notwithstanding the verdict, ORCP 63. They then challenged the jury's award of punitive damages, as excessive, by means of a motion for a new trial under ORCP 64 B(5). That rule of procedure provides for setting aside a judgment and granting a new trial when the evidence is insufficient to justify the verdict or when the verdict "is against law."

[10] Because the award of punitive damages in this case is permissible, we need not, and do not, decide what procedures the trial court should follow when an award of punitive damages is excessive.

the party entitled to recover establishes a prima facie right to recover under subsection (1) of this section.

"(3) Punitive damages, if any, shall be determined and awarded based upon the following criteria:

"(a) The likelihood at the time that serious harm would arise from the defendant's misconduct;

"(b) The degree of the defendant's awareness of that likelihood;

"(c) The profitability of the defendant's misconduct;

"(d) The duration of the misconduct and any concealment of it;

"(e) The attitude and conduct of the defendant upon discovery of the misconduct;

"(f) The financial condition of the defendant; and

"(g) The total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, punitive damage awards to persons in situations similar to the claimant's and the severity of criminal penalties to which the defendant has been or may be subjected."

At trial, plaintiff presented evidence that permitted a jury to conclude, by clear and convincing evidence, that defendants acted with wanton disregard for the health and safety of others. ORS 30.925(1). From the evidence, a reasonable jury could conclude that punitive damages should be awarded. There also was evidence respecting the criteria listed in ORS 30.925(3).

Evidence was presented that defendants actually knew, or should have known, for many years before developing the ATV model that injured plaintiff, that their ATVs were highly likely to cause serious personal injury or death. *See* ORS 30.925(3)(a), (b) (stating relevant standards). The jury heard evidence that defendants, from the time when they developed and began manufacturing ATVs, failed to conduct adequate safety testing of those products for stability and crashworthiness and that defendants failed to consider adequate protections for ATV users against foreseeable roll-over accidents. Evidence was presented that defendants had known from the mid-1970s that ATVs were experiencing accidents and tip-overs; there was evidence that defendants'

sales staffs and employees were aware of this. In the early 1980s, the evidence showed, an agency of the United States government undertook to investigate the safety of ATVs. Defendants responded by launching an advertising campaign, advising ATV users to ride safely, and by conducting in-house safety tests that were inadequate to determine potential safety hazards of ATVs.

Plaintiff presented evidence that he suffered serious permanent injuries for which defendants denied responsibility. *See* ORS 30.925(3)(a), (e) (stating relevant standards). Plaintiff suffered multiple fractures, which required that his eye sockets, cheek bones, jaw, and teeth be wired together. As a result of the accident, plaintiff suffered damage to his inner ear, affecting his balance and cognitive skills; damage to his eye sockets, causing double vision; and damage to his sinuses and deep skeletal structures, causing severe headaches and impairment of mental abilities (including reduced short-term memory). There was evidence that those injuries are permanent.

Plaintiff also presented evidence that defendants' misconduct, which started with the failure to conduct reasonable safety tests of the design of ATVs and was enhanced by defendants' disregard of notices that the product was dangerous, continued for more than 15 years; in that period, defendants profited from sales of ATVs that defendants knew or should have known were inherently dangerous. *See* ORS 30.925(3)(c), (d) & (e) (stating relevant standards). There was evidence that, when plaintiff's injury occurred, defendants had notice, from the federal government agency investigating the safety of ATVs, that numerous injuries were occurring from the use of ATVs and that many of those injuries resulted from rearward tip-overs. According to the evidence, defendants maintained that there was nothing wrong with the design or testing of the product and that there was no reason to add safety mechanisms or to engage in safety tests to avoid the type of accident suffered by plaintiff.

Finally, plaintiff presented evidence showing that defendant manufacturer's net worth was $4.9 billion at the time of trial. ORS 30.925(3)(f) (stating relevant standards).

The jury assessed $919,390.39 as compensatory damages[11] and $5,000,000 as punitive damages. The punitive damages awarded here are not outside the range that a rational juror would be entitled to award in this instance. The Supreme Court of the United States has recognized that the Due Process Clause of the Fourteenth Amendment imposes a substantive limit on the size of punitive damages awards, but has refused to "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus." *Pacific Mutual Life Insurance Co. v. Haslip*, 499 US 1, 18, 111 S Ct 1032, 113 L Ed 2d 1 (1991). In *Haslip*, the Court recognized that an award that was four times the amount of compensatory damages, and more than 200 times the amount of out-of-pocket expenses, was permissible but "may be close to the line." *Id.* at 23. In *TXO Production Corp. v. Alliance Resources Corp.*, 509 US ____, 113 S Ct 2711, 2722-23, 125 L Ed 2d 366 (1993), the Court upheld a jury award that was 526 times greater than the out-of-pocket damages awarded.

In this instance, the jury received correct and complete instructions concerning the requirements for awarding punitive damages, thereby receiving adequate guidance from the trial court. The court in turn received its guidance from the legislature and, thus, in this case, the jury also acted with "legislative guidance expressing the considered judgment of the elected representatives of the community." *TXO Production*, 113 S Ct at 2719. The award of punitive damages is about 5.4 times the award of compensatory damages, about 528 times the amount of plaintiff's out-of-pocket expenses, and about one-tenth of one percent of defendant manufacturer's net worth.[12] Although that is a large award, it is neither unreasonable nor grossly excessive in the light of the criteria set out in ORS 30.925, the evidence in the record, and

---

[11] The jury allocated 20 percent of the fault to plaintiff and 80 percent to defendants. The trial court reduced the award of compensatory damages by 20 percent, to $735,512.31.

[12] Our recitation is descriptive, not prescriptive. We do not suggest that there is some specific, mathematically precise outer limit on punitive damages. *See* 320 Or at 550-51 and 551 n 8.

the awards upheld against federal due process challenges in *Haslip* and *TXO Production*. A reasonable jury could conclude that this assessment of damages is appropriate to "punish a willful, wanton or malicious wrongdoer and to deter that wrongdoer and others similarly situated from like conduct in the future." *See State ex rel Young v. Crookham*, 290 Or 61, 65, 618 P2d 1268 (1980) (stating quoted standard).

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is affirmed.