Submitted on remand from the Oregon Supreme Court June 8, affirmed
November 14, 2001

Paul R. BOCCI, Jr.,
guardian ad litem for Paul R. Bocci, III,
an incapacitated individual,
*Plaintiff,*

*v.*

KEY PHARMACEUTICALS, INC.,
a foreign corporation,
Schering-Plough Corporation,
a foreign corporation,
and Schering Corporation,
a foreign corporation,
*Defendants,*

*and*

MILES, INC.,
an Indiana corporation,
Miles, Inc., Pharmaceutical Division,
an Indiana corporation,
Legacy Health System,
an Oregon corporation,
Legacy Immediate Care Clinic,
Frederick D. Edwards, M.D.,
and the Eugene Clinic,
a partnership,
*Defendants.*

Frederick D. EDWARDS, M.D.,
*Respondent,*

*v.*

KEY PHARMACEUTICALS, INC.,
a foreign corporation,
Schering-Plough Corporation,
a foreign corporation,
and Schering Corporation,
a foreign corporation,
*Appellants.*

A9210-07050; A86556

35 P3d 1106

William F. Gary, James E. Mountain, Jr., Sharon A. Rudnick, and Harrang Long Gary Rudnick P.C. for appellants.

Daniel M. Holland, Ronald B. Terzenbach, Mary H. Spillane, Margaret A. Sundberg, and Williams, Kastner & Gibbs PLLC for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

This case is before us on remand from the Oregon Supreme Court. Previously, we affirmed by an equally divided court the trial court judgment in favor of defendant Frederick D. Edwards on his cross-claim against defendant Key Pharmaceuticals, Inc. (Key). *Bocci v. Key Pharmaceuticals, Inc.*, 158 Or App 521, 974 P2d 758 (1999) (en banc). The issue on which we divided concerned the validity and treatment of a Mary Carter agreement between plaintiff Bocci and defendant Edwards. *See id.* at 527-36 (Riggs, J., pro tempore, concurring), 548 (Edmonds, J., dissenting), 548-64 (Landau, J., dissenting). The concurring opinion also discussed the validity of a punitive damage award and concluded that the award did not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 545-47 (Riggs, J., pro tempore, concurring). The Supreme Court vacated our decision and remanded the case for reconsideration in light of its decision in *Parrott v. Carr Chevrolet, Inc.*, 331 Or 537, 17 P3d 473 (2001). *Bocci v. Key Pharmaceuticals, Inc.*, 332 Or 39, 22 P3d 758 (2001). On remand, we affirm, writing only to discuss whether the punitive damage award violates due process.

The pertinent facts are set forth in our previous opinions and will be summarized only briefly here. Plaintiff Bocci was a long-time user of defendant Key's prescription asthma medication Theo-Dur, a timed-release theophylline product. In October 1990, Bocci was prescribed the antibiotic ciprofloxacin for a skin rash, but failed to tell the prescribing physician that he was taking Theo-Dur. On October 27, 1990, Bocci went to an urgent care clinic where Edwards worked complaining of nausea, vomiting, and diarrhea. Edwards diagnosed gastroenteritis and sent Bocci home. Edwards did not diagnose theophylline toxicity, because Theo-Dur had been promoted to him as a safe drug, and he did not believe that a patient on a stable dose of the drug could develop a serious toxicity problem. Shortly after Edwards sent him home, Bocci experienced seizures and was admitted to a hospital emergency room. He was treated for theophylline toxicity. He suffered permanent brain damage from the seizures.

Bocci sued Key and Edwards, but entered into a Mary Carter agreement with Edwards that had the effect of limiting Edwards's potential liability for Bocci's injuries. Edwards cross-claimed against Key for negligence and fraud on the ground that Key had failed to provide adequate information concerning the potential toxicity of Theo-Dur. The jury returned verdicts in favor of Bocci and Edwards against Key. The jury awarded Bocci more than $5 million in compensatory damages and $35 million in punitive damages. The jury awarded Edwards $500,000 in compensatory damages and $22 million in punitive damages.

Key moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial or remittitur. It argued that the punitive damage awards needed to be reviewed as required by *Honda Motor Co. v. Oberg*, 512 US 415, 114 S Ct 2331, 129 L Ed 2d 336 (1995), and *Pacific Mutual Life Insurance Co. v. Haslip*, 499 US 1, 111 S Ct 1032, 113 L Ed 2d 1 (1991). Key made no distinct arguments pertaining to Edwards's punitive damage award, but it argued that the total punitive damage award of $57 million in favor of Bocci and Edwards was excessive because their "own errors gave rise to their injuries." Key summarized the procedures from *Haslip* as requiring that the trial court review the award and state on the record its reasons for concluding that the award is not excessive and as requiring the appellate court "to review the award to ensure that it is reasonable in its amount and rational in the light of the purpose of punishment and deterrence." It cited as relevant to post-verdict review the culpability of the defendant's conduct, the desirability of discouraging others from similar conduct, and the impact on the parties as well as the impact on innocent third parties. It also argued that the trial court's post-verdict review "should be guided by the criteria in ORS 30.925 [for product liability punitive damage awards], which resemble those in *Haslip* and will serve as minimums in the absence of a definitive ruling by the Oregon Supreme Court." Key then quoted the criteria from ORS 30.925(2):

"(a) The likelihood at the time that serious harm would arise from the defendant's misconduct;

"(b) The degree of the defendant's awareness of that likelihood;

"(c)  The profitability of the defendant's misconduct;

"(d)  The duration of the misconduct and any conceal-ment of it;

"(e)  The attitude and conduct of the defendant upon discovery of the misconduct;

"(f)  The financial condition of the defendant; and

"(g)  The total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, punitive damage awards to persons in situations similar to the claimant's and the severity of criminal penalties to which the defendant has been or may be subjected."

The trial court reviewed the award and concluded that it was not excessive.

On appeal, Key significantly changed its arguments. As noted in the concurring opinion in our previous decision:

"Key argues for the first time on appeal that the trial court erred in failing to review the punitive damage award to Edwards independently of the punitive damage award to Bocci, because the statutory criteria from ORS 30.925 apply to strict liability punitive damage awards, and Edwards's claims involved negligence and fraud. Not only did Key fail to preserve this issue in the trial court, but it waived any argument on this point by specifically requesting the court to review the punitive damages awards in their entirety under the criteria listed in ORS 30.925."

*Bocci*, 158 Or App at 547 (Riggs, J., pro tempore, concurring). We adopt that reasoning from the concurring opinion. The narrow question before us now is whether, in light of the type of review of punitive damages that Key sought, the trial court erred in concluding that the punitive damage award was not unconstitutionally excessive.

In *Parrott*, the jury awarded $1 million in punitive damages to a plaintiff who had been subjected to unlawful trade practices in the course of a sale of a used vehicle for $11,496. 331 Or at 540. The court reiterated its previously announced standard for post-verdict judicial review:

" '[T]he standard for post-verdict judicial review of an award of punitive damages is as follows: A jury's award of

punitive damages shall not be disturbed when it is within the range that a rational juror would be entitled to award in the light of the record as a whole; the range that a rational juror would be entitled to award depends, in turn, on the statutory and common law factors that allow an award of punitive damages for the specific kind of claim at issue.' "

*Id.* at 548 (quoting *Honda Motor Co. v. Oberg*, 320 Or 544, 549, 888 P2d 8, *cert den* 517 US 1219 (1996)).[1]

The court further explained that the standard announced in *Oberg* was consistent with the United States Supreme Court's subsequent decision in *BMW of North America, Inc. v. Gore*, 517 US 559, 116 S Ct 1589, 134 L Ed 2d 809 (1996). *Parrott*, 331 Or at 553. The court said that an award that is "grossly excessive" in violation of the Due Process Clause is one that is not within the range that a rational juror could award. *Id.* It went on to hold that the guideposts that the United States Supreme Court announced in *Gore* were factors for a court to consider "as part of the *Oberg* (state) rational juror review." *Id.* at 554. The court summarized the factors as follows:

"(1) the statutory and common-law factors that allow an award of punitive damages for the specific kind of claim at issue, *Oberg* (state), 320 Or at 549; (2) the state interests that a punitive damages award is designed to serve, *Gore*, 517 US at 568; (3) the degree of reprehensibility of the defendant's conduct, *id.* at 575; (4) the disparity between the punitive damages award and the actual or potential harm inflicted, *id.* at 580; and (5) the civil and criminal sanctions provided for comparable misconduct, *id.* at 583."

*Parrott*, 331 Or at 555.

■ Key first argues that both the jury and the court necessarily over-emphasized the financial condition of the defendant, which is only one of the relevant factors under ORS

---

[1] In its opening brief, Key explicitly recognizes that "the trial court did an admirable job of predicting the standard that would be enunciated several months later by the Oregon Supreme Court [in *Oberg*]." We agree with Key that the trial court did, in fact, apply essentially the same standard as that quoted above.

Key goes on to argue, however, that the standard announced by the Oregon Supreme Court in *Oberg* fails to comport with due process. Given that the court necessarily concluded otherwise in *Parrott,* we reject that argument without further discussion.

30.925(2). We disagree. The jury specifically found by clear and convincing evidence that Key knowingly withheld information or misrepresented information concerning toxicity problems associated with Theo-Dur. Evidence demonstrated that Key's aggressive marketing of Theo-Dur as "safe" and superior to other products not only misled Edwards, but also was quite effective in maintaining a strong market for its drug in the face of competition from generic drugs and a declining market for theophylline products. In short, the evidence demonstrated a strong connection between Key's profits and the misconduct for which punitive damages were awarded.

Key next argues that the punitive damage award was improper in light of the state interests that such an award is designed to serve. *BMW of North America, Inc.*, 517 US at 568. Key argues that its misleading marketing of Theo-Dur was part of a nationwide campaign and that the State of Oregon lacks any legitimate state interest in punishing its conduct outside of Oregon. We rejected a similar argument in *Axen v. American Home Products Corp.*, 158 Or App 292, 315, 974 P2d 224, *adhered to on recons* 160 Or App 19, 981 P2d 340, *rev den* 329 Or 357 (1999), *cert den* 528 US 1136 (2000). That case, like this one, concerned a punitive damage award involving misleading promotion of a prescription drug that led to damages to an Oregon plaintiff. In *Axen*, we held that the defendant "was not punished for its promotional activities outside of Oregon—it was punished for failing to warn [the Oregon plaintiffs'] physicians" of a potential hazard of the drug involved. *Id.* at 315.

Key argues that *Axen* is distinguishable because the plaintiff in *Axen* was the patient of the physician who was not adequately warned whereas, in this case, the punitive damage award at issue was to the physician who was not adequately warned. That is not a viable distinction, however. The state's interests are identical, whether the harmed party receiving the punitive damage award is a patient or a physician.

Key next argues that the third factor—the reprehensibility of its conduct—militates against the punitive damage

award here. Most of Key's arguments concerning the reprehensibility of its conduct—or lack thereof—we reject without discussion. One aspect of Key's argument, however, merits discussion. Key argues that, in assessing the reprehensibility of its conduct, this court is obliged to ignore the fact that the jury assigned no fault to Edwards for his misdiagnosis of Bocci's condition. Key argues that, under *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 US 424, 121 S Ct 1678, 149 L Ed 2d 674, 684 (2001), the court is to review the damage award "*de novo.*"[2] That is correct. The *Cooper Industries* decision, however, does not require a court reviewing a punitive damage award to reassess the basic facts found by a jury in support of the jury's determination of liability.

At issue in *Cooper Industries* was whether the appellate court had erred in reviewing a trial court's post-verdict punitive damage award decision for "abuse of discretion." 149 L Ed 2d at 684. The Court stated:

> " 'The factual findings made by the [trial courts] in conducting the excessiveness inquiry, of course, must be accepted unless clearly erroneous. * * * But the question whether a fine is constitutionally excessive calls for the application of a constitutional standard to the facts of a particular case, and in this context *de novo* review of that question is appropriate.' "

*Id.* at 686-87 (citing and quoting *United States v. Bajakajian*, 524 US 321, 336-37 n 10, 118 S Ct 2028, 141 L Ed 2d 314 (1998)) (ellipsis in original). The Court went on to analogize the "excessiveness" assessment of punitive damage awards to determinations such as "reasonable suspicion" and "probable cause," which are essentially legal determinations. *Id.* at 687. The Court concluded that "courts of appeals should apply a *de novo* standard of review when passing on district courts' determinations of the constitutionality of punitive damage awards." *Id.* at 687. The Court went on to note that, unlike a determination of compensatory damages, the *amount* of a punitive damage award is not a "fact" that is "tried" by a jury.

---

[2] Key uses the term *de novo* in the sense that some federal courts use it, as referring to plenary review of legal questions. That use is different from the Oregon understanding of the phrase, as limited to review of factual determinations. *See Trabosh v. Washington County,* 140 Or App 159, 163 n 6, 915 P2d 1011 (1996).

*Id.* 687-88. The Court in no way suggested, however, that an appellate court reviewing a trial court's post-verdict punitive damages review (or, for that matter, a trial court reviewing a jury's punitive damage award) is obliged to second-guess the jury's basic liability determinations.

Nothing in *Cooper Industries* calls into question the "rational juror" standard of review announced by the Oregon Supreme Court in *Oberg*. Oregon appellate courts have never applied a deferential "abuse of discretion" standard of review to trial courts' post-trial determinations regarding punitive damages. *See MacCrone v. Edwards Center, Inc.*, 160 Or App 91, 105, 980 P2d 1156 (1999), *vac'd and rem'd* 322 Or 41, 22 P3d 758, *adhered to on remand* 176 Or App 355, 31 P3d 513 (2001). Although we do not defer to the trial court, we are not free to reduce or eliminate a punitive damage award based on a finding of culpability of a party that the jury determined was *not* culpable.

■          Finally, regarding the fourth factor, the disparity between the award and the actual or potential harm inflicted, *Parrott*, 331 Or at 555, Key argues that the ratio of punitive damages to compensatory damages awarded to Edwards is excessive. As noted above, Key did not preserve this issue in the trial court but argued only that the *total* award to Bocci and Edwards was excessive.[3] Key argues that *Cooper Industries* compels us to reach the question of "the reasonableness of the punitive damage award in light of the disparity between the punitive award and the harm suffered by Edwards only." Nothing in *Cooper Industries* suggests that appellate courts are required to consider unpreserved issues. No error is apparent on the face of the record in this regard. We therefore decline to consider Key's unpreserved argument concerning the ratio of Edwards's punitive damage award to his compensatory damages.

Affirmed.

---

[3] The ratio of the punitive damage awards to the compensatory damages awards was roughly ten to one.