Argued and submitted September 5, 2008, on appeal, affirmed; on cross-appeal, reversed and remanded for entry of judgment for respondent - cross- appellant Wilsonville Holiday Partners, LLC January 28, 2009

Aladdin H. HANDAM,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

WILSONVILLE HOLIDAY PARTNERS, LLC,
an Oregon limited liability company,
dba Wilsonville Holiday Inn,
*Defendant-Respondent*
*Cross-Appellant,*

*and*

Gerardo PEREGRINA
and Lockhart Investments, LLC,
dba Lockhart Investments Management Group
and Lockhart Investments,
*Defendants-Respondents.*

Washington County Circuit Court
C040634CV; A128759

201 P3d 920

Jeremy L. Fellows argued the cause and filed the briefs for appellant - cross-respondent.

Lisa E. Lear argued the cause for respondent - cross-appellant Wilsonville Holiday Partners, LLC, and respondent Gerardo Peregrina.

No appearance for respondent Lockhart Investments, LLC.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Plaintiff appeals a judgment after a jury verdict awarded him damages on his common-law wrongful constructive discharge claim. His complaint also alleged other employment-related claims against defendants, including a statutory wage claim and a statutory claim for discrimination based on race.

Plaintiff asserts that the trial court erred in directing a verdict for defendant Wilsonville Holiday Partners, LLC (Wilsonville), on his statutory wage claim, and erred in striking punitive damages and disallowing attorney fees on the wrongful discharge claim against Wilsonville. Plaintiff further asserts that the trial court erred in entering judgments for Wilsonville and defendant Gerardo Peregrina on the race discrimination claim.

Plaintiff obtained a default judgment against defendant Lockhart Investments, LLC (Lockhart), on his claim of race discrimination.[1] He appeals from a supplemental judgment awarding him damages and attorney fees on that claim, asserting that the trial court erred in failing to award him the full amount of his requested attorney fees in light of the absence of an objection from Lockhart.

■ Wilsonville cross-appeals, contending that the trial court erred in denying its motion for directed verdict on the wrongful discharge claim. We conclude that the trial court erred in denying Wilsonville's motion for directed verdict, and therefore reverse the judgment for plaintiff against Wilsonville. Because Wilsonville's cross-appeal is dispositive of most of plaintiff's assignments of error, we address it first. In reviewing the trial court's denial of Wilsonville's motion for a directed verdict on the wrongful discharge claim, we state the facts in the light most favorable to plaintiff, in whose favor the jury reached a verdict. We will affirm the trial court's ruling unless there is no evidence from which the jury could have found the facts necessary to support the verdict with respect to each element of the claim. *Rathgeber v.*

---

[1] The circumstances of his efforts to collect on that judgment are described in *Handam v. Wilsonville Holiday Partners, LLC*, 221 Or App 493, 190 P3d 480 (2008).

*James Hemenway, Inc.*, 335 Or 404, 411, 69 P3d 710 (2003); *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984).

Plaintiff, who is an Arab, immigrated to the United States from Jordan in 1995 and obtained his United States citizenship in 2000. He began working at the Holiday Inn in 1995 and continued to work there when the facility was acquired by Wilsonville in 2001. At the relevant time, plaintiff worked as a banquet captain and a shift manager. In February 2002, Wilsonville hired defendant Peregrina as Restaurant and Banquet Manager, and he was plaintiff's immediate supervisor. Peregrina is Hispanic and he hired several Hispanic workers.

During his employment with Wilsonville, plaintiff received many commendations, including awards for superior performance and "Employee of the Year" in 2002. As a part of his employment, plaintiff was licensed to serve liquor under the administrative rules of the Oregon Liquor Control Commission (OLCC). As banquet captain and the morning shift manager, plaintiff supervised several Hispanic employees who were not fluent in English.

In December 2002, upon arriving at work one morning, plaintiff found a wrapped wedding gift hidden on a high shelf in the banquet office and a disposable camera in the banquet office waste basket. He assumed that the items had been left from a wedding reception the night before. Plaintiff remembered that banquet employees had been instructed to bring any misplaced property to the front desk. He took a picture of the gift with the disposable camera.

Plaintiff had the pictures in the camera developed. Some of them showed Hispanic employees drinking champagne and beer in the banquet office during their shift, in violation of OLCC rules. Plaintiff showed the photographs to some managers; they laughed but took no action against the employees. Plaintiff also learned that the Hispanic employees were violating OLCC rules by keeping open containers of alcoholic beverages in the banquet office and refrigerator.

In the spring of 2003, plaintiff brought the OLCC violations to Peregrina's attention. Plaintiff also expressed

his concern to Peregrina that some Hispanic employees had said that they did not have proper documentation to work. Peregrina, who was responsible for making sure that new employees have proper work authorization, told plaintiff not to worry about it and to "give them a chance."

After plaintiff reported the violations to Peregrina, Peregrina began treating plaintiff differently by refusing to allow him to take rest and meal breaks, reducing his work hours, making his job harder by reducing his staff, correcting him about things for which he did not correct Hispanic employees, and giving Hispanic employees more hours even though plaintiff had seniority. Plaintiff began to believe that he was being treated differently because he is not Hispanic. Eventually, Peregrina demoted plaintiff to waiter. Plaintiff quit his job. He brought this proceeding, asserting, among other claims, that he was constructively discharged from his employment in retaliation for complaining about the Hispanic employees.

Wilsonville filed a motion for directed verdict on the constructive wrongful discharge claim, asserting that the evidence was insufficient to go to the jury, because plaintiff had failed to offer evidence that he had been discharged for fulfilling an important societal obligation or exercising a job-related right of important public interest. *See Holien v. Sears, Roebuck and Co.*, 298 Or 76, 86, 689 P2d 1292 (1984) (describing categories of wrongful discharge claims). The trial court determined that the evidence was sufficient to allow the claim to go to the jury, which found that plaintiff had been wrongfully discharged. On the cross-appeal, the question is whether there was evidence to support the jury's verdict with respect to each element of the wrongful discharge claim.

██ The general rule in Oregon is that employment is "at will." That means that, except as otherwise provided by statute or employment agreement, employees may be terminated without notice and for any reason. *Simpson v. Western Graphics*, 293 Or 96, 99, 643 P2d 1276 (1982). There are exceptions, however. As relevant to this case, Oregon allows recovery in tort to employees who are discharged for certain socially undesirable motives. *Babick v. Oregon Arena Corp.*,

333 Or 401, 407-10, 40 P3d 1059 (2002) (describing tort); *Holien*, 298 Or at 86. An employer may be subject to tort liability for discharging an employee for fulfilling an important public duty or societal obligation, *see, e.g., Delaney v. Taco Time Int'l*, 297 Or 10, 16-17, 681 P2d 114 (1984) (employee discharged for refusing to defame another employee); *Nees v. Hocks*, 272 Or 210, 218-19, 536 P2d 512 (1975) (employee discharged for serving on jury); or for exercising a job-related right of public importance, *see, e.g., Brown v. Transcon Lines*, 284 Or 597, 612, 588 P2d 1087 (1978) (employee unlawfully discharged for filing workers' compensation claim).

 Here, plaintiff was not discharged from his employment; he quit. Thus, to establish a wrongful *discharge* claim, he must additionally establish that he was constructively discharged, meaning that Wilsonville's intentional conduct made his employment so intolerable that a reasonable person in plaintiff's position would have resigned. *McGanty v. Staudenraus*, 321 Or 532, 557, 901 P2d 841 (1995). Contrary to plaintiff's contention, however, "constructive discharge" is not, in itself, a tort—it is simply an alternate means of establishing the element of discharge in a claim for wrongful discharge. *Id*. Thus, a plaintiff may satisfy the discharge prong of a wrongful discharge claim by pleading and proving a "constructive discharge," but the plaintiff must nonetheless establish a motive for the constructive discharge that gives rise to liability for wrongful discharge. The focus of Wilsonville's cross-appeal is on the adequacy of plaintiff's evidence with respect to Wilsonville's motive for the constructive discharge.

Plaintiff contends that he has presented evidence from which the jury could find that Wilsonville's motivation in constructively discharging him was to retaliate for plaintiff's exercise of a job-related right or an important societal obligation. We first address whether plaintiff's act of reporting the OLCC violations to his managers was a job-related right or an important societal obligation.

Plaintiff asserts that, as one who holds an OLCC service permit, he had an obligation to report the OLCC violations of his coworkers to his supervisor. He notes that ORS 471.385 authorizes OLCC to revoke a service permit when a

permittee "permitted any act" that would constitute an OLCC violation. ORS 471.385.[2] Drinking on the job is an OLCC violation. OAR 845-006-0345.[3] As a permittee, plaintiff believed that he had an obligation to report OLCC violations to avoid losing his own permit for having "permitted" OLCC violations, and he asserts that that obligation was the type of job-related right or public duty that supports a claim for wrongful discharge.

■ ■ At the outset, we conclude that plaintiff's act of reporting the OLCC violations was not a job-related right of the nature sufficient to support a claim for wrongful discharge. In that context, a job-related right is a personal right or benefit of public importance, as indicated by statutory and constitutional provisions and case law, to which the worker is entitled by virtue of his or her employment. *Holien*, 298 Or at 90; *see Brown/Shidler v. Board of Education*, 207 Or App 163, 169, 139 P3d 1048, *rev den*, 342 Or 253 (2006) (explaining that a job-related right is "a personal benefit or right to which the employee is entitled as a matter of public policy"). Examples include workers' compensation benefits or resistance to sexual harassment or discrimination. *Holien*, 298 Or at 90 (statutes and case law prohibiting sexual harassment establish important public policy related to rights of employee). The reporting of OLCC violations, although

---

[2] ORS 471.385 provides, in part:

"(1) The Oregon Liquor Control Commission may revoke or suspend a service permit, or impose a civil penalty in lieu of or in addition to suspension as provided by ORS 471.322, if it finds or has reasonable grounds to believe any of the following to be true:

"* * * * *

"(c) That the permittee has *performed or permitted any act which would constitute a violation of any provision* of this chapter or any rule of the commission, if the act were performed or permitted by any licensee of the commission.

"* * * * *

"(3) When there has been a violation of this chapter or any rule adopted thereunder upon any premises licensed by the commission, the commission may revoke or suspend either the service permit of the employee who violated the law or rule or the license of the licensee upon whose premises the violation occurred, or both the permit and the license."

(Emphasis added.)

[3] OAR 845-006-0345(1) provides, in part:

"Drinking on Duty: No licensee, permittee, employee or agent will drink or be under the influence of intoxicants while on duty."

potentially in the employee's personal interest, is not a *right* of employment; no statute, rule, constitutional provision or case law confers it. *See Dymock v. Norwest Safety Protective Equipment*, 334 Or 55, 60, 45 P3d 114 (2002) (Although statute declared that noncompetition agreements presented to employees at times other than those permitted by statute are void, nothing in statute conferred a right to refuse to sign such agreements for purposes of wrongful discharge.).

We next consider whether, in reporting the OLCC violations, plaintiff carried out a public duty that enjoys protection from an employer's ability to terminate an employee at will. *Babick* is the Supreme Court's most recent exposition on the subject of when a worker's acts are in furtherance of a public duty that will support a claim for wrongful discharge. In *Babick*, the plaintiffs were hired as private security guards at a concert arena. They were discharged in retaliation for arresting or attempting to arrest concert-goers for criminal behavior. The arrests were consistent with the plaintiffs' security guard training and were lawful under Oregon law. 333 Or at 404. The plaintiffs brought claims for wrongful discharge, alleging that they were discharged for fulfilling an important societal obligation to protect the public. The trial court dismissed the claims under ORCP 21 A(8). This court reversed as to those plaintiffs who had conducted actual arrests, explaining that the plaintiffs were fired for fulfilling a public policy in favor of orderly and safe communities, as reflected in the statutes that criminalize disruptive behavior and authorize arrests by security personnel and private citizens.

The Supreme Court reversed this court, explaining that, although the plaintiffs' actions were lawful, the cited statutes imposed no public *duty* on the security officers to perform the acts for which they were discharged. The court noted that it is necessary to *find* a public duty because it is not appropriate for a court to *create* a public duty. In rejecting our reliance on statutes reflecting a public policy against crime and in favor of orderly and safe communities, the court said that

"expressions of a public desire for law and order are far too general to support plaintiffs' 'public duty' theory. We are

concerned here with a duty to perform a specific act (the arrest of lawbreakers by private citizens or private security personnel), and the statutes cited have nothing to say about that kind of act."

333 Or at 409. "In short," the court said, "we find no support in the statutes that have been brought to our attention * * * for a conclusion that some substantial public duty requires the kinds of acts that allegedly triggered plaintiffs' discharge." 333 Or at 410.

In *Love v. Polk County Fire District*, 209 Or App 474, 483, 149 P3d 199 (2006), we attempted to synthesize the case law on wrongful discharge subsequent to *Babick*, specifically addressing when a worker's conduct is of such a character as to warrant protection in tort law as the exercise of an important public duty. We said that the cases addressing the subject, including *Babick*, establish that a public duty may either be explicit or it may be "found" through cases, statutes, rules, or constitutional provisions that either specifically encourage or require a particular action or otherwise demonstrate that such action enjoys high social value. 209 Or App at 486. We explained:

> "In *Babick*'s wake, we must conclude that, for purposes of wrongful discharge, the class of conduct that is deemed to 'enjoy high social value' is very narrowly circumscribed. Nevertheless, that class consists *at least* of (1) conduct that, by statute or rule, is explicitly described as being of high social value; and (2) conduct that is similar to that giving rise to legally compelled obligations to act in other, analogous contexts. However, it is also apparent from *Babick* that general public concern over a particular social problem (*e.g.*, the use of controlled substances in *Babick*) does not necessarily give rise to a protected 'important public duty' to act, regardless of how ostensibly laudable the actor's efforts may be."

209 Or App at 486-87 (emphasis in original; footnote omitted). Here, as in *Babick*, no statute or administrative rule explicitly imposed on plaintiff a duty to carry out the acts that resulted in his termination. As discussed below, 225 Or App at 451, the pertinent statutes and rules imposed, at most, a duty not to "permit" coworkers from violating OLCC

requirements; the statutes say nothing about reporting OLCC violations by coworkers after the fact. We must nonetheless consider whether the statutes, administrative rules, or case law show that plaintiff's acts of reporting the alleged violations were required by "some substantial public duty," *Babick*, 333 Or at 410, or were of "high social value" because they were similar to a compelled obligation to act in other contexts. *Love*, 209 Or App at 486.

We recognize that the statutes and administrative rules relating to OLCC reflect a strong general public policy favoring compliance with the laws governing the service of alcoholic beverages. ORS 471.360 - 471.385. Certainly, plaintiff could have lost his own license had he "permitted" his coworkers to violate OLCC requirements, and any effort on his part to prevent his coworkers from violating OLCC requirements was consistent with provisions of the statutes governing plaintiff's own conduct. ORS 471.385. However, in the absence of some express legislative or administrative statement, we decline to infer, and we cannot create, a "substantial public duty" on the part of OLCC service permittees to report OLCC violations of their coworkers. *See Lamson v. Crater Lake Motors, Inc.*, 216 Or App 366, 375, 173 P3d 1242 (2007), *rev allowed*, 344 Or 390 (2008) ("It is not enough that the provisions or cases 'express a general public policy; rather, they must encourage specific acts or "otherwise demonstrat[e] that such acts enjoy high social value." ' " (quoting *Eusterman v. Northwest Permanente, P.C.*, 204 Or App 224, 230, 129 P3d 213, *rev den*, 341 Or 579 (2006))).

Further, we reject plaintiff's contention that his actions in reporting the OLCC violations were analogous to those of a "whistleblower," who enjoys protection from discharge for reporting or disclosing certain abuses or illegal behaviors of the employer. *Lamson*, 216 Or App at 380-81. Whistleblowing typically involves reporting or threatening to report an employer's wrongdoing of significant concern to public health or safety. *See, e.g., Love*, 209 Or App at 476 (employer cover-up of fatal workplace accident); *Hirsovescu v. Shangri-La Corp.*, 113 Or App 145, 148-49, 831 P2d 73 (1992) (making good faith reports of suspected violations of

nursing home patients' rights). There was no evidence presented here from which it could be found that the OLCC violations that plaintiff reported to his employer presented a significant concern to public health or safety.

We reach the same conclusions as to whistleblowing with respect to the reporting of immigration violations. Further, plaintiff has not cited any statute or administrative rule that explicitly or implicitly imposed on him an affirmative duty to report the alleged violations, and we decline to infer a substantial public duty to report such violations.

For the reasons discussed, we conclude that there was no evidence from which the jury could find the essential element of a motive by Wilsonville to discharge plaintiff for engaging in either a job-related right or carrying out an important societal obligation. We conclude, therefore, that the trial court erred in denying Wilsonville's motion for directed verdict on the wrongful discharge claim.

Our disposition of the cross-appeal renders moot plaintiff's fourth assignment of error, which challenges the trial court's refusal to award attorney fees on plaintiff's wrongful discharge claim. We move on to consider the remaining assignments of error.

In his first assignment of error, plaintiff contends that the trial court erred in directing a verdict for Wilsonville on his statutory wage claim, which is based on his allegations that Wilsonville owes him wages for rest and meal breaks that it did not allow him to take. The Supreme Court has addressed and rejected such a claim in *Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 185 P3d 446 (2008). We therefore reject plaintiff's first assignment of error without further discussion.

In his third assignment of error, plaintiff contends that the trial court erred in not rendering a verdict for plaintiff on his statutory claim for race discrimination, which was tried to the court. Plaintiff's only argument is that the trial court was constitutionally bound[4] by and failed to follow the

---

[4] Article VII (Amended), section 3, of the Oregon Constitution prohibits a court from reexamining a fact tried by a jury unless there is no evidence to support the jury's verdict. *Oberg v. Honda Motor Co.*, 320 Or 544, 548, 888 P2d 8 (1995).

implicit findings of the jury on plaintiff's wrongful discharge claim that plaintiff was constructively discharged because he was treated differently on account of his race, which plaintiff asserts were the facts underlying his race discrimination claim. In light of our determination that the wrongful discharge claim should not have gone to the jury, the third assignment of error is moot and we do not discuss it further.[5]

In his second assignment of error, plaintiff asserts that the trial court erred in declining to submit the issue of punitive damages to the jury on the wrongful discharge and race discrimination claims. In light of our disposition of both the wrongful discharge and the statutory claim for race discrimination, this assignment of error is moot.

As previously noted, defendant Lockhart did not appear, and the trial court entered a default judgment against it on the claim for race discrimination, awarding damages and attorney fees. That judgment is on appeal only with respect to the award of attorney fees. Plaintiff asserts in his fifth assignment of error that the trial court erred in awarding him attorney fees in an amount substantially less than the requested $157,261.12 in fees, costs, and disbursements. The trial court awarded $21,000, reasoning that plaintiff should not recover fees incurred subsequent to the date of default. In plaintiff's view, because Lockhart is jointly and severally liable with defendant Wilsonville, the award should include fees incurred at trial on the claims on which plaintiff prevailed against Wilsonville. In light of our determination that the wrongful discharge claim against Wilsonville should not have gone to the jury, we reject plaintiff's argument.[6]

To summarize, as asserted by Wilsonville on its cross-appeal, the trial court erred in submitting the claim for wrongful discharge to the jury because there is no evidence

---

[5] For this reason we need not decide whether plaintiff is correct that there is no difference, for purposes of race discrimination, whether defendants discriminated against plaintiff because he was an Arab or whether defendants discriminated in favor of employer's Hispanic employees.

[6] At oral argument, plaintiff also asserted that, in the absence of an objection, the trial court lacked discretion to award less than the requested fee. We have previously rejected that contention. *See, e.g., Chase v. Vernam*, 199 Or App 129, 136, 110 P3d 128 (2005).

that plaintiff was constructively discharged for exercising either a job-related right or fulfilling a societal obligation. Plaintiff's assignments of error on appeal relating to rulings on the wrongful discharge claim either fail or are rendered moot in light of that determination. Plaintiff's wage claim also fails in light of the Supreme Court's opinion in *Garfur*.

On appeal, affirmed; on cross-appeal, reversed and remanded for entry of judgment for respondent - cross-appellant Wilsonville Holiday Partners, LLC.