Daniel G. KOLLER, DVM,
dba Companion Pet Clinic, NE 82nd Ave,
*Plaintiff*
*Cross-Respondent*,

*v.*

Maureena SCHMAING,
*Defendant*
*Cross-Appellant*,

*and*

Susan Ford BURNS,
*Defendant.*

Maureena SCHMAING,
*Counterclaim Plaintiff-Respondent*
*Cross-Appellant*,

*and*

Susan Ford BURNS,
*Counterclaim Plaintiff*,

*v.*

COMPANION PET CLINIC OF NE PORTLAND, LLC;
and Daniel G. Koller, DVM,
dba Companion Pet Clinic, NE 82nd Ave,
*Counterclaim Defendants-Appellants*
*Cross-Respondents.*

Multnomah County Circuit Court
050100598; A136633 (Control)

Daniel G. KOLLER, DVM,
dba Companion Pet Clinic, NE 82nd Ave,
*Plaintiff-Appellant,*

*v.*

Maureena SCHMAING,
*Defendant-Respondent,*

*and*

Susan Ford BURNS,
*Defendant.*

Maureena SCHMAING
and Susan Ford Burns,
*Counterclaim Plaintiffs,*

*v.*

COMPANION PET CLINIC OF NE PORTLAND, LLC,
*Counterclaim Defendant.*

Multnomah County Circuit Court
050100598; A139232

296 P3d 529

Marilyn E. Litzenberger, Judge. (General Judgment entered June 6, 2007; Corrected* General Judgment entered September 11, 2008; Orders entered March 24, 2008, April 28, 2008, and July 7, 2008)

Jean Kerr Maurer, Judge. (Order entered March 14, 2008)

R. Daniel Lindahl argued the cause for appellants- cross-respondents. With him on the briefs was Lindahl Law Firm, PC.

Meagan A. Flynn argued the cause for respondent- cross-appellant. With her on the briefs were Preston, Bunnell & Flynn, LLP, and Benjamin Rosenthal and Law Offices of Benjamin Rosenthal.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

### HASELTON, C. J.

This appeal arises from a jury verdict in favor of Maureena Schmaing on her counterclaim for wrongful discharge against her employers, Daniel G. Koller, D.V.M., dba Companion Pet Clinic, NE 82nd Ave. (Koller), and Companion Pet Clinic of NE Portland, LLC (Pet Clinic).[1] Although the procedural posture on appeal is, as we shall describe, convoluted, the parties' dispute centers on issues which, as amplified below, we ultimately resolve as follows: (1) The only operative judgment, for purposes of our jurisdiction and review, is the original judgment, and not the third corrected general judgment.[2] (2) The trial court erred in failing to name Koller, in addition to Pet Clinic, in that judgment as a judgment debtor on the wrongful discharge counterclaim. (3) The trial court correctly denied the motion for directed verdict against the wrongful discharge counterclaim. (4) Koller has failed to establish that any erroneous denial of his asserted right to self-representation requires a new trial as to the counterclaim against him individually. Consistently with those conclusions, we remand to the trial court with direction to designate Koller as an additional judgment debtor on the wrongful discharge counterclaim, but otherwise affirm.[3]

---

[1] Pet Clinic was dissolved in 2005, and, at that point, Koller continued to operate the clinic as a sole proprietorship. For reasons that will become apparent, it is important that we distinguish between Koller as a sole proprietor and Pet Clinic.

[2] On June 6, 2007, the trial court entered a general judgment and money award, and we will refer to that judgment throughout this opinion as the "original general judgment." The trial court subsequently entered a "Corrected General Judgment" and a "Second Corrected General Judgment," which have been vacated and are not at issue on this appeal. On September 11, 2008, the trial court entered a "Corrected* General Judgment," which we will refer to as the "third corrected general judgment" throughout this opinion.

[3] Koller and Pet Clinic have jointly raised other matters as assignments of error, which we have considered and reject without further discussion.

Koller filed an additional appeal from an order of garnishment, A139232, which has been consolidated with the principal appeal, A136633. In briefing and argument, Koller has raised no contentions pertaining to that matter. Thus, we deem his appeal in A139232 to have been abandoned and, accordingly, affirm.

[4] The description of historical facts in the following summary is stated consistently with our review of the trial court's denial of the directed verdict motion against the wrongful discharge counterclaim. *See Schoen v. Freightliner LLC*, 224 Or App 613, 621-22, 199 P3d 332 (2008) ("In reviewing the denial of a motion for directed verdict, we review the record to determine whether there

## I. FACTS AND PROCEDURAL POSTURE[4]

A. *The parties' relationship, pleadings, and trial*

From February 2002 to June 2, 2004, Schmaing worked as a receptionist at Pet Clinic, which Koller owned and operated as a practicing licensed veterinarian. Schmaing's duties generally consisted of administrative tasks such as answering phones, greeting clients, and managing client information. While she was working at Pet Clinic, Schmaing obtained services, medications, and pet food from the clinic. During the second year of her employment, Schmaing witnessed Koller treat animals in a manner that she believed was abusive and unprofessional. According to Schmaing, Koller would sometimes get frustrated and become violent, angry, and threatening toward an animal that he was treating.

Eventually, Schmaing decided to report Koller to the proper authorities. To that end, on May 3, 2004, accompanied by Miller, a former Pet Clinic employee, Schmaing met with an attorney, Burns. Burns agreed to assist Schmaing in preparing a complaint against Koller to submit to the Oregon State Veterinary Medical Examining Board (veterinary board), which is responsible for investigating complaints against veterinarians "alleged to be practicing in violation of law." ORS 676.160(19); ORS 676.165(1).

Later that month, Miller informed Koller about the meeting with Burns and Schmaing's assertions that Koller had been "conducting [himself] in an unprofessional and unethical manner" and that he had "euthanized an animal without the client's consent." On May 27, 2004, Koller confronted Schmaing about the meeting and the negative remarks that Miller had attributed to her. Schmaing responded that she "didn't really know what he was talking about." Koller then told Schmaing that he believed that Miller was "blackmailing him" and that Koller intended to create a document that Schmaing would need to sign.

---

is sufficient evidence from which the jury could have found the facts necessary to establish the of the claim."). The procedural circumstances pertaining to our determination as to jurisdiction (and, derivatively, reviewability) are undisputed.

When Schmaing returned to work the next day, Koller instructed her to sign a document that he had prepared and titled "<u>DECLARATION OF MAUREENA SCHMAING</u>," which consisted of 14 declarations including, as pertinent here:

"9. I have never met nor provided client records from Companion Pet Clinic, NE 82d Ave. to a Ms. Susan Ford Burns, an Oregon attorney.

"10. I have never taken Gary Miller to Ms. Burns' office in my life.

"11. To my knowledge and belief Dr. Koller has never euthanized an animal without the client's consent.

"12. Gary Miller contacted me after his discharge and wanted me to participate in his plans to 'get Koller's license.' I declined because I have not seen Dr. Koller conduct himself in an unethical or unprofessional manner.

"* * * * *

"I declare under penalty of perjury, under the laws of the State of Oregon that the foregoing is true and correct to the best of my recollection."

(Capitalization and underscoring in original.)

Schmaing told Koller that she did not have time to sign the declaration, but that she would take it home and "look it over"—which Schmaing did—but she did not sign it. On June 2, 2004, Schmaing returned to work, and Koller insisted that she sign the declaration. Schmaing refused because, among other things, the statements quoted directly above were false and, with respect to declaration number 12, Schmaing informed Koller that she had, in fact, "seen him conduct himself in an unprofessional and unethical manner." Koller again instructed Schmaing to sign the declaration, and, when she refused, he immediately fired her.

In July 2004, Schmaing submitted a complaint against Koller to the veterinary board.[5] On January 14, 2005, Koller filed a complaint, *pro se*, against Schmaing alleging, *inter alia*, conversion and shoplifting with respect

[5] The veterinary board ultimately determined that the evidence was insufficient to support a finding that Koller had treated animals inhumanely.

to services and pet products that Schmaing had obtained and for which she had not paid. Schmaing counterclaimed against both Koller and Pet Clinic for wrongful discharge, intentional infliction of emotional distress, and failure to pay wages. Koller answered the counterclaims, again *pro se*, asserting as an affirmative defense that he was the real party in interest because Pet Clinic was defunct and "ha[d] been such for the majority of time" that Schmaing had worked at the clinic. Pet Clinic did not separately answer the counterclaim.

As noted in the opening paragraph of this opinion, one of the critical issues presented for our review pertains to Koller's asserted entitlement to represent himself. On the first day of trial, August 17, 2006, at a hearing on the parties' respective *in limine* motions, Koller informed the court during the following exchange that he intended to represent himself:

"DR. KOLLER:    I am going to be my own attorney—

"THE COURT:    Dr. Koller, you're not going to be your own attorney. The entity that is named here is Companion Pet Clinic. Dr. Koller doing business as Companion Pet Clinic, the Oregon statutes do not allow you to represent yourself in the capacity of Companion Pet Clinic.

"DR. KOLLER:    And that's true.

"THE COURT:    That's right.

"DR. KOLLER:    But I'm Daniel Koller being sued by them and I can represent myself, Your Honor. I'm sorry—

"THE COURT:    Would you like to brief that matter—

"DR. KOLLER:    —that's been in the constitution.

"THE COURT:    —for the Court?

"DR. KOLLER:    I don't need a brief. It's constitutional. And I'll brief it, and it'll be no problem, by tomorrow you'll have a brief on it. Don't you deny me my right to defend myself. They're suing me. And you are denying me my right to defend myself * * *."

Koller never filed the promised brief,[6] and the trial proceeded before a jury with Ms. Koller (Koller's wife) jointly

---

[6] In addition to being a veterinarian, Koller was an attorney licensed in California.

representing Koller and Pet Clinic. For the first eight days of trial, Koller never referred to, or reiterated, any request to proceed by representing himself. Then, on August 29, 2006, during the cross-examination of Schmaing, Koller sought to discharge Ms. Koller as his attorney and to represent himself:

"DR. KOLLER: Your Honor, I'm discharging my attorney.

"THE COURT: Then you have no one to represent you. I'm not going to allow you to do that.

"DR. KOLLER: Yes, I—you're not allowing me to represent myself? Are you saying that?

"THE COURT: We went over that at the beginning of trial, Dr. Koller. You're not qualified in this state to represent Companion Pet Clinic—

"DR. KOLLER: That's correct.

"THE COURT: —82nd Street, LLC.

"DR. KOLLER: That's correct. I said that if you read the pleadings—

"THE COURT: It does say, [']Dr. Koller doing business as Companion Pet Clinic[']; that's an issue that came up at the beginning of the trial.

"DR. KOLLER: No, no, no. They're suing separately. The—[Ms. Koller is] representing the LLC.

"THE COURT: Dr. Koller, you are excused until noon.

"DR. KOLLER: No, Your Honor, this is—you have it wrong. I can represent myself as an individual. And the LLC has to be represented by a licensed attorney in the State of Oregon. As an individual, and I am being sued as an individual, I have a right to represent myself.

"THE COURT: Dr. Koller, please step outside.

"DR. KOLLER: Well, Your Honor, I move for a mistrial if I'm not present during my defense. That's it."

The court excluded Koller from the courtroom, and Ms. Koller continued her cross-examination.[7]

---

[7] Koller does not assign error to the trial court excluding him from the courtroom.

Later the same day, Koller again addressed the court directly regarding an evidentiary dispute. The court admonished Koller that "you are to address the Court through counsel as we have discussed many times." Ms. Koller responded, "Your Honor, I need my client to assist me in this trial. I do not have the staff here, as [Schmaing's counsel] does, and I count on my client to assist me during this trial." Koller continued to interject and to address the court directly. The court then excluded Koller "for a moment" "as a sanction" for being "disrespectful to the Court." The court addressed Ms. Koller:

"THE COURT: *** I want to make clear, Ms. Koller, that you need to control your client. Your client is not the lawyer trying the case. You are.

"MS. KOLLER: I understand that, Your Honor."

Ms. Koller continued to jointly represent Koller and Pet Clinic for the remaining three days of the trial until its conclusion on September 1, 2006.

B. *Judgment and subsequent developments*

As noted, the threshold issue in this appeal pertains to identifying the proper object of our review. Because the trial court entered several successive judgments, including "corrected judgments," it is essential to recount that procedural sequence in inescapably arcane detail.

At the conclusion of trial, a special verdict form was submitted to the jury. That form bore the caption "Daniel G. Koller, DVM, dba, Companion Pet Clinic NE 82nd Ave[,] Plaintiff,"—that is Koller, individually—"v. Maureena Schmaing, Defendant." It inexplicably did not refer to Pet Clinic as a counterclaim defendant. The jury returned a verdict for "plaintiff"—that is Koller, individually—on his claims for conversion and shoplifting, with damages and penalties totaling $1,026. The jury also returned a verdict in favor of "defendant" (Schmaing) on her counterclaim for wrongful discharge, with damages of $64,360.[8]

---

[8] The jury rejected Koller's claim for fraudulent misrepresentation and also rejected Schmaing's counterclaim for intentional infliction of emotional distress.

Subsequently, on June 6, 2007, the trial court entered a general judgment that included two money awards. The first money award pertained to the verdict in Koller's favor on his claims for conversion and shoplifting. That award designated Koller as the judgment creditor with Schmaing as the judgment debtor. The second money award pertained to the verdict in Schmaing's favor on her counterclaim for wrongful discharge. That award designated Schmaing as a judgment creditor with Pet Clinic as the sole judgment debtor—omitting Koller as a judgment debtor on the counterclaim.

In response to Schmaing's objection to that omission, the trial court, in a letter to counsel, explained that Schmaing had failed to (1) "fil[e] a motion to join Dr. Koller individually as a party to the lawsuit" and (2) "serv[e] Dr. Koller in his individual capacity with a Summons and Counterclaims." Consequently, the court determined that Koller was not a party to the lawsuit. The court added that

> "[t]he ruling denying Dr. Koller to proceed *pro se* by this Court was premised on the fact that only Companion Pet Clinic, NE 82nd Ave., and Companion Pet Clinic of NE Portland, LLC were parties in the case. Had Dr. Koller been individually joined as a party, the Court's decision would have been different."[9]

On June 18, 2007, Pet Clinic filed a combined motion for judgment notwithstanding the verdict and an alternative motion for a new trial. That motion was deemed denied on July 31, 2007. On August 24, 2007, Pet Clinic filed a notice of appeal from the general judgment entered on June 6, 2007 (original general judgment).[10] On August 30, 2007, Schmaing filed a notice of cross-appeal from that judgment.

Meanwhile, on August 27—that is, three days after Pet Clinic had filed its appeal from the original general judgment—the trial court filed a "corrected general

---

[9] The trial court later candidly, and correctly, acknowledged that that basis was incorrect, because Schmaing had, in fact, served Koller individually. *See* 254 Or App at 126.

[10] Koller—presumably because he was not named as a judgment debtor—did not appeal from that judgment.

judgment and money award," which purported to include both "Daniel Koller, D.V.M., dba Companion Pet Clinic of NE Portland, LLC" and "Companion Pet Clinic of NE Portland, LLC" as judgment debtors. On August 30, the trial court filed a "second corrected general judgment and money award," which corrected the trial court's error in the first corrected judgment in naming "Daniel Koller, D.V.M., dba Companion Pet Clinic of NE Portland, LLC" as a judgment debtor instead of "Daniel Koller, D.V.M., dba Companion Pet Clinic, NE 82nd Ave." Both of those judgments were entered on August 30, 2007.

On September 26, 2007, Koller and Pet Clinic filed a notice of appeal and an amended notice of appeal, respectively, from those modified judgments. Schmaing also filed an amended notice of cross-appeal from those modified judgments.

On October 31, 2007, Pet Clinic and Koller filed a joint motion for a summary determination of appealability. This court determined that the trial court lacked jurisdiction to enter both the first and second corrected judgments under ORCP 71 A, because the modification in both of those judgments—*viz.*, to add Koller as a judgment debtor on the wrongful discharge counterclaim—was substantive, rather than merely a correction of a "clerical mistake."[11] Accordingly, we vacated those judgments and dismissed the corresponding appeals and cross-appeals.

In April 2008—with the appeal from the original judgment still pending—Schmaing filed a motion for relief from the original judgment, pursuant to ORCP 71 B(1) and ORCP 71 C. Koller opposed those motions. The trial court granted Schmaing's ORCP 71 C motion and ordered that Koller be included as a judgment debtor in the judgment in Schmaing's favor for wrongful discharge. The court determined that, notwithstanding the pendency of the appeal, ORCP 71 C[12] provided jurisdiction for the trial court

---

[11] ORCP 71 A is quoted below. *See* 254 Or App at 130.

[12] ORCP 71 C is quoted below. *See* 254 Or App at 131.

to exercise its "inherent authority" to correct the general judgment, so long as it did so for "good and sufficient reasons within a reasonable period of time."[13]

By way of further explanation of its allowance of relief under ORCP 71 C, the trial court stated that it had "mistakenly omitted Koller from that portion of the judgment resolving Schmaing's counterclaims" because it had "overlooked" Schmaing's proof of service of her responsive pleading, including the wrongful discharge counterclaim, on Koller. In addition, after expressing its "concern" that its denial of Koller's request to proceed *pro se* could result in a remand for a new trial, because the expressed basis of that denial—*viz.*, that Koller individually was not a party to the litigation—was inaccurate, the court posited additional rationales for, and justifications of, that ruling. In particular, the court asserted that "Koller's demeanor in the courtroom * * * suggested that his participation in the role of counsel could be disruptive to the proceedings," and that

> "Ms. Koller represented the plaintiff and both counterclaim defendants throughout the trial. The interests of the two counterclaim defendants were aligned for all purposes with respect to all claims, defenses and counterclaims. Koller assisted in the defense of Schmaing's counterclaims and in the prosecution of his theft claim against Schmaing by providing questions to his counsel for direct and cross examination of witnesses and by suggesting factual and legal arguments to her during the proceedings. From time to time, the court also allowed Koller to address the court directly. Koller's counsel, Ms. Koller, more than adequately protected the interests of both of her clients throughout the trial. A complete review of the trial record shows that Koller was not prejudiced by the court's order denying his motion to represent his own interests and to defend his professional reputation."

---

[13] Although it allowed relief under ORCP 71 C, the trial court concluded that ORCP 71 B(1) was inapposite for the following three reasons:

"(1) Schmaing is not seeking 'relief from judgment' instead she is asking the court to correct or modify the judgment under ORCP 71A or 71C; (2) ORCP 71B(1)(a) pertains to mistakes made by a party, not by the court; and (3) ORCP 71B(1) requires that a motion brought under reason (a) is to be accompanied by a pleading or Rule 21A motions and Schmaing did not include either with her motion."

Consistently with its allowance of relief under ORCP 71 C, the trial court entered the third corrected general judgment—the last of the succession of "corrected judgments"—naming Koller, as well as Pet Clinic, as a judgment debtor on the wrongful discharge counterclaim. The parties filed timely amended notices of appeal from that third corrected general judgment.

## II.  ANALYSIS

Notwithstanding its procedurally contorted posture, the disposition of this appeal depends on the resolution of four interrelated questions: *First*, did the trial court lack jurisdiction to enter the third corrected judgment naming Koller as a judgment debtor? *Second*, if so, did the court err in failing to name Koller as a judgment debtor in the original judgment? *Third*, did the court err in denying Pet Clinic and Koller's motion for directed verdict against the wrongful discharge counterclaim? *Fourth*, if the court did not err in denying the motion for a directed verdict, is Koller nevertheless entitled to a new trial as to the wrongful discharge counterclaim against him individually because the trial court erroneously precluded him from representing himself?

In particular, Koller and Pet Clinic jointly contend that the trial court erred in granting Schmaing's ORCP 71 C motion, and, consequently, entering the third corrected general judgment, because the trial court lacked jurisdiction to substantively modify the original judgment while an appeal from that judgment was pending. They further jointly contend that the court erred in failing to grant a directed verdict against Schmaing's wrongful discharge claim, because Schmaing's actions did not involve an "important public duty." Finally, in addition to those joint contentions, Koller asserts individually that the court erred in precluding him from representing himself after he expressed his determination to discharge his counsel.

Schmaing remonstrates that Koller is properly a judgment debtor on the wrongful discharge counterclaim either because the trial court correctly entered the third corrected judgment so naming him[14] or because the trial court

---

[14] In that regard, Schmaing contends that the court properly entered that judgment pursuant to ORCP 71 C or, failing that, (by way of her cross-assignment of error) should have entered that judgment pursuant to ORCP 71 B.

erred by failing to include Koller as a judgment debtor in the original judgment (the subject of her cross-appeal). Schmaing further contends that the directed verdict was properly denied because good faith reporting of professional misconduct is an "important public duty." Finally, with respect to Koller's asserted entitlement to self-representation, Schmaing contends that the trial court properly exercised its discretion to deny Koller's request and that, even if the denial was erroneous, it does not constitute reversible error because Koller failed to demonstrate cognizable prejudice.

As amplified below, we first conclude that the trial court lacked "inherent authority" under ORCP 71 C to enter the third corrected judgment while the appeal from the original judgment was pending before this court. Accordingly, we vacate the third "corrected general judgment" and address the challenges pertaining to the original general judgment. With respect to the original judgment, we conclude that: (1) The trial court erred in failing to designate Koller as a judgment debtor on Schmaing's wrongful discharge counterclaim. (2) The trial court did not err in denying the motion for a directed verdict on Schmaing's wrongful discharge counterclaim, because good faith reporting of professional misconduct is an "important public duty." And (3) the trial court's denial of Koller's requests to discharge his attorney and proceed *pro se* was not reversible error because, regardless of whether the court erred, Koller has failed to identify any cognizable prejudice with respect to the defense of the counterclaim warranting reversal.[15]

A. *Koller's status as judgment debtor*

We begin with the propriety of the third corrected general judgment because that is, legally and practically, the necessary point of departure. Once entered, that judgment remains the "statement of the court's decision in the case and governs the rights and obligations of the parties that are subject to the judgment" unless and until it is set aside. ORS 18.082.

---

[15] As noted, 254 Or App at 118 n 3, we reject Pet Clinic's and Koller's other assignments of error without further discussion.

For his part, Koller does not dispute that he was properly named and served as a counterclaim defendant on the wrongful discharge counterclaim or that the jury's special verdict on that counterclaim did not include him individually. Rather, Koller contends that the trial court lacked jurisdiction under ORCP 71 C to enter the third corrected judgment while the appeal from the original judgment was pending.[16] We agree for the following reasons.

ORS 19.270 provides, in part:

"(1)   The Supreme Court or the Court of Appeals has jurisdiction of the cause when the notice of appeal has been served and filed as provided in ORS 19.240, 19.250 and 19.255. The trial court may exercise those powers in connection with the appeal as are conferred by law, and retains jurisdiction in the matter for the following purposes:

"(a)   Deciding requests for attorney fees, costs and disbursements or expenses pursuant to ORCP 68 or other provision of law.

"(b)   Enforcing the judgment, subject to any stay of the judgment.

"(c)   Deciding a motion for judgment notwithstanding the verdict under ORCP 63.

"(d)   Deciding a motion for new trial under ORCP 64.

"(e)   *Deciding a motion for relief from judgment under ORCP 71 B.*

"* * * * *

"(5)   Notwithstanding the filing of a notice of appeal, the trial court has jurisdiction:

"(a)   *To enter an order or supplemental judgment under ORCP 71*[.]"

(Emphases added.)

---

[16] Koller correctly asserts that Schmaing's counterclaim against him was deemed dismissed with prejudice upon entry of the original general judgment by operation of ORS 18.082(3), which provides:

"Upon entry of a general judgment, any request for relief in the action that is not decided by the general judgment or by a previous limited judgment, that has not been incorporated into the general judgment under subsection (2) of this section, or that cannot be decided by a supplemental judgment, is dismissed with prejudice unless the judgment provides that the dismissal is without prejudice."

Thus, under ORS 19.270, upon the filing of a notice of appeal, jurisdiction of the cause rests in the appellate court, with the trial court retaining limited jurisdiction with respect to precisely identified matters. As pertinent here, the trial court "retains" limited jurisdiction to decide "a motion for relief from judgment under ORCP 71 B," ORS 19.270(1)(e),and jurisdiction "[t]o enter an order or supplemental judgment under ORCP 71," ORS 19.270(5)(a).[17]

Within the "retained" jurisdiction described in ORS 19.270, ORCP 71, in turn, narrowly circumscribes a trial court's jurisdiction to vacate or correct a judgment notwithstanding the pendency of an appeal. ORCP 71 provides, in part:

"**A Clerical mistakes.** *Clerical mistakes* in judgments, orders, or other parts of the record and errors therein *arising from oversight or omission* may be corrected by the court at any time on its own motion or on the motion of any party and after such notice to all parties who have appeared, if any, as the court orders. *During the pendency of an appeal, a judgment may be corrected as provided in subsection (2) of section B of this rule.*

"**B Mistakes; inadvertence; excusable neglect; newly discovered evidence, etc.**

"B(1) **By motion.** On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect * * *.

"B(2) **When appeal pending.** *A motion under sections A or B may be filed with and decided by the trial court during the time an appeal from a judgment is pending before an appellate court.* The moving party shall serve a copy of the motion on the appellate court. The moving party shall file a copy of the trial court's order in the appellate court within seven days of the date of the trial court order.

---

[17] ORS 19.270(5)(a) is inapplicable here because, contrary to Schmaing's assertion, the "corrected general judgment" in this case is not "an order or supplemental judgment"—it is a new and substantively different general judgment. *See* ORS 18.005(7), (17) (defining, respectively, "general judgment" and "supplemental judgment").

Any necessary modification of the appeal required by the court order shall be pursuant to rule of the appellate court.

"**C Relief from judgment by other means.** This rule does not limit the inherent power of a court to modify a judgment within a reasonable time, or the power of a court to entertain an independent action to relieve a party from a judgment, or the power of a court to grant relief to a defendant under Rule 7 D(6)(f), or the power of a court to set aside a judgment for fraud upon the court."

(Boldface in original; emphases added.)

In sum, once a notice of appeal is filed, the trial court's jurisdiction to set aside or "correct" a general judgment is extremely limited. In particular, only ORCP 71 B—and ORCP 71 A, by derivative reference to ORCP 71 B— confer such authority and, concomitantly, jurisdiction. Critically, unlike ORCP 71 A and ORCP 71 B(2), ORCP 71 C includes no reference to "correction" or modification of a judgment during the pendency of an appeal. We must conclude that that difference is not a matter of legislative inadvertence, but rather one of design. *See* ORS 174.010 (instructing that, in construing a statute, the court is "not to insert what has been omitted, or to omit what has been inserted"); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 614, 859 P2d 1143 (1993) ("The legislature knows how to include qualifying language in a statute when it wants to do so.").[18]

Because "correction" of a judgment pursuant to ORCP 71 C during the pendency of an appeal is not encompassed within a trial court's retained jurisdiction under ORCP 19.270, the trial court lacked jurisdiction to enter the third corrected general judgment pursuant to ORCP 71 C. Accordingly, we vacate the third corrected general judgment, which names Koller as a judgment debtor on the wrongful discharge counterclaim.

Nevertheless, the original judgment remains— and, with it, Schmaing's cross-appeal from that judgment, assigning error to the trial court's failure to name Koller in

---

[18] Schmaing identifies no Oregon authority, including authority antedating the enactment of ORCP 71, recognizing and sustaining a trial court's "inherent authority" to substantively alter a judgment that is the object of a pending appeal.

that judgment as a judgment debtor. Koller responds that Schmaing invited the asserted error "by remaining silent rather than correcting the trial court's misunderstanding when the issue arose in the context of Dr. Koller's assertion of his right of self-representation."

We reject out of hand Koller's invocation of "invited error." As Schmaing emphasizes, her pleadings explicitly identified Koller, individually, as a counterclaim defendant, and her counsel never disputed Koller's statements to the court that he, individually, was a counterclaim defendant.

With respect to the merits of the trial court's omission of Koller as a judgment debtor, that failure was predicated on what the court later acknowledged was an erroneous understanding that Koller was not properly joined as a party to the action—when, in fact, Koller was indisputably a party to the action below, both as plaintiff and counterclaim defendant. Indeed, Koller repeatedly acknowledged that fact at trial. *See* 254 Or App at 121, 122 ("I'm Daniel Koller being sued by them." *** "I am being sued as an individual."). Consequently, the trial court erred in failing to name Koller as a judgment debtor in the original judgment.

Nevertheless, whether that error was harmless depends on the disposition of both defendants' contention that the court erred in denying the motion for directed verdict against the wrongful discharge claim. Further, even if the motion for directed verdict was properly denied, if Koller is correct that the trial court committed reversible error in precluding him from representing himself, he would be entitled to a new trial with respect to the counterclaim against him individually. Accordingly, we proceed to each of those matters in turn.

B. *Denial of the directed verdict: "Important public duty"?*

Koller and Pet Clinic assert that "[t]he trial court erred by failing to grant a directed verdict against [Schmaing's] wrongful discharge [counter]claim because Schmaing's actions did not involve fulfilling any important public duty."

Absent a contrary agreement, an employer may discharge an employee "at any time for any reason." *Patton*

*v. J. C. Penney Co.*, 301 Or 117, 120, 719 P2d 854 (1986). Notwithstanding that general rule, a discharged employee may recover under the common-law tort of wrongful discharge under the following circumstances:

> "(1) [W]hen the discharge is for exercising a job-related right that reflects an important public policy, *see, e.g., Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978) (employee unlawfully discharged for filing workers' compensation claim); or (2) when the discharge is for fulfilling some important public duty, *see, e.g., Delaney v. Taco Time Int'l*, 297 Or 10, 681 P2d 114 (1984) (employee discharged for refusing to defame another employee); *Nees v. Hocks*, 272 Or 210, 536 P2d 512 (1975) (employee discharged for serving on jury)."

*Babick v. Oregon Arena Corp.*, 333 Or 401, 407, 40 P3d 1059 (2002).

In determining whether an employee was discharged for fulfilling an important public duty, we must "*find* a public duty, not create one, using constitutional and statutory provisions and case law." *Id.* at 407-08 (internal quotation marks omitted; emphasis in original). The legal source of the purported public duty must either "(1) specifically encourage or require a particular action or (2) otherwise demonstrate that such action enjoys high social value." *Love v. Polk County Fire District*, 209 Or App 474, 486, 149 P3d 199 (2006) (internal quotation marks and brackets omitted).

We have previously recognized that, when an employee reports, or prepares to report, his or her employer to the proper authorities for purported violations, the employee fulfills an important public duty by such "whistleblowing." For example, in *McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or App 107, 109-11, 684 P2d 21, *rev den*, 298 Or 37 (1984), we concluded that the plaintiff had a legally sufficient "potential wrongful discharge claim" where she had been discharged after she had threatened to report to the Health Division what she believed to be an instance of staff abuse of a patient in the defendant's nursing home. In finding an important public duty, we explained that "[t]he Health Division is charged with protecting patients' rights"

under statute and that "a report to it would be a societal obligation of a person who knows of violations." *Id.* at 110; *see also id.* at 111 n 5 (noting that "[t]here is no reason that an employe's protection should depend on whether the employer acts before or after the employe is able to file a complaint"); *Huber v. Dept. of Education*, 235 Or App 230, 244, 244 n 5, 230 P3d 937 (2010) (concluding that "reporting of potentially dangerous substandard nursing practices to the [Oregon State Board of Nursing] is an important public duty" and the fact that the employee was terminated before he filed a complaint did not affect our analysis).

More recently, in *Love*, the plaintiff appealed the trial court's grant of summary judgment against her wrongful discharge claim. 209 Or App 474. We reversed and remanded, holding that the plaintiff employee had raised a genuine issue of material fact as to whether the plaintiff was discharged for whistleblowing about the defendant fire district's alleged cover-up during a federal investigation following a fatal accident. *Id.* at 496. In that context, we explained that "exposing certain statutory or regulatory violations, including health and safety violations, is sufficiently 'important' that, under certain conditions, an employee who does so is protected from being discharged for that conduct." *Id.* at 487.

Conversely, where the law does not specifically encourage reporting, or demonstrate its high social value, no important public duty to report exists. For example, in *Handam v. Wilsonville Holiday Partners, LLC*, the plaintiff hotel employee was discharged after reporting to his supervisor that he believed that certain hotel employees had violated Oregon Liquor Control Commission (OLCC) rules by drinking on shift and that the same coworkers might also have been in violation of immigration laws. 225 Or App 442, 201 P3d 920 (2009), *vac'd and rem'd*, 347 Or 533, 225 P3d 43, *adh'd to on remand*, 235 Or App 688, 234 P3d 133, *rev den*, 349 Or 171 (2010). We determined that the plaintiff's actions did not fulfill an important public duty because the OLCC statutes "say nothing about reporting OLCC violations by coworkers," much less encourage such reporting. 225 Or App at 451. We then distinguished the "whistleblower" line of wrongful discharge cases, including

*Love*, because there was no evidence that the purported OLCC violations that the plaintiff reported "presented a significant concern to public health and safety." *Handam*, 225 Or App at 451-52. We reached the same conclusion with respect to the report of possible immigration violations. *Id.* at 452.

The Supreme Court applied a similar analysis, and came to a similar result, in a subsequent case, *Lamson v. Crater Lake Motors, Inc.*, 346 Or 628, 630, 216 P3d 852 (2009).[19] There, the defendant car dealership had hired an outside sales firm to conduct a special sales event, during which the plaintiff car sales manager observed what he believed to be unethical sales tactics by the outside firm. *Id.* at 631. He subsequently complained to the defendant's general manager about the purported misconduct. *Id.* When the defendant later brought the same firm back to run another sales event, the plaintiff refused to participate and was subsequently fired. *Id.* at 633. The plaintiff filed a wrongful discharge claim, asserting that his actions had served the public interest in preventing deceptive sales practices. *Id.* at 638. Specifically, the plaintiff claimed that he had fulfilled an important public duty and had been fired for (1) "refusing a directive to violate state [unlawful business and trade practices statutes and regulations]" and (2) *"complaining to management* about what he reasonably believed to be * * * illegal and unethical sales tactics." *Id.* at 639 (emphasis in original).

After the jury returned a verdict in the plaintiff's favor, the trial court entered a judgment, and the employer appealed. The Supreme Court ultimately reversed, rejecting the plaintiff's whistleblowing contention. In so holding, the Court emphasized that (a) the plaintiff "did not report to [the] defendant's management * * * that [the] defendant corporation was itself engaged in such practices," and (b) the plaintiff "did not report the unlawful trade practices of [the outside firm] to any *entity with authority to take action*" to enforce trade practice laws and regulations. *Id.* at 640 (emphasis added). Thus, unlike the plaintiff in *Love*, the

---

[19] The Supreme Court vacated and remanded our decision in *Handam* for reconsideration in light of its decision in *Lamson*. On remand, we adhered to our original opinion, observing that *"Lamson* makes it clear that we applied the correct legal test in our original opinion." *Handam*, 235 Or App at 690.

plaintiff in *Lamson* had not threatened to blow the whistle on the *employer*—and, unlike the plaintiff in *McQuary*, had not threatened to report purported violations to the *appropriate regulatory authority*.

We apply those principles to this case. Schmaing contends that she was discharged for fulfilling two different important public duties: (1) refusing to defame Miller by refusing to the sign the false declaration and (2) preparing to report to the veterinary board her good-faith belief that Koller had violated veterinary professional standards. Koller and Pet Clinic dispute that Schmaing's conduct in *either* respect fulfilled an important public duty—but acknowledge that, to prevail on appeal, they must demonstrate that *neither* did so. Thus, if we agree with Schmaing as to the latter, we need not address the former.

Koller and Pet Clinic concede that reporting animal abuse is an important public duty; however, they argue that that duty is restricted to veterinary professionals, because the statutes that require such reporting expressly apply exclusively to veterinarians and veterinary technicians. *See* ORS 686.445; ORS 686.555.[20] Koller and Pet Clinic argue that those statutes reflect a legislative decision that only persons trained in treating animals bear a duty to report animal abuse. Koller and Pet Clinic assert that, as a member of the public, "the only statutes relevant to Schmaing's actions were the general criminal prohibitions against animal abuse," and those statutes do not mention public reporting. *See* ORS 167.310 - 167.390 (criminal offenses against animals).

For her part, while recognizing that reporting animal abuse is an important public duty, Schmaing relies primarily on a different important public duty—*viz.*, reporting

---

[20] ORS 686.445(1) provides:

"Except as provided in ORS 686.455, *licensed veterinarians and veterinary technicians* may report to peace officers, animal control officers or officers of private organizations devoted to humane treatment of animals any animal that the veterinarian or veterinary technician knows or reasonably believes to be abandoned, neglected or abused. Any veterinarian or veterinary technician making a report under this section is immune from any civil or criminal liability by reason of making the report."

(Emphasis added.) ORS 686.455 mandates aggravated animal abuse reporting for veterinarians.

purported professional misconduct to the veterinary board. Schmaing asserts that professional licensing and regulatory statutes manifest legislative concern that veterinarians be held to common professional and ethical standards and—of particular significance here—legislative recognition of the role the public plays in detecting and reporting professional misconduct. Specifically, ORS 676.165 provides that the veterinary board shall investigate complaints made against a licensed veterinarian. ORS 676.170 provides civil immunity for reporters:

> "A *person* who reports or supplies information in *good faith* to a health professional regulatory board or to a committee reporting to a health professional regulatory board shall be immune from an action for civil damages as a result thereof."

(Emphasis added.) *See also* ORS 676.160(19) (defining "health professional regulatory board" to include the Oregon State Veterinary Medical Examining Board).

As Schmaing points out, civil immunity under ORS 676.170 broadly applies to *any person* who makes a *good faith* report to a health professional regulatory board. *Cf. Love*, 209 Or App at 491-92 (observing that the public employee whistleblowing statute, ORS 659A.203(b), protects only public employees whose disclosures are based on reasonable belief of misconduct). That broad statutory grant of immunity demonstrates that the legislature specifically intended to encourage good-faith public reporting of healthcare professional misconduct to the appropriate regulatory board, in this case the veterinary board. *See Love*, 209 Or App at 492 ("[T]he 'important public duty' doctrine is innately intertwined with the legislative expression of policy choices in statutes."); *see also Huber*, 235 Or App at 242-43 ("In the absence of a mandatory reporting requirement, an employee can demonstrate that an important public duty exists by citing statutes or other authority indicating legislative policies to promote the reporting of violations and prevent employers from retaliating against employees who report such violations.").

We conclude that directly applicable statutes unambiguously manifest a "legislative *** policy choice" of promoting, and protecting, good-faith public reporting of

health professional misconduct to the appropriate health professional regulatory board. Thus, this case is akin to *Love* and *McQuary*—and materially distinguishable from *Handam* and *Lamson*. Specifically, here, Schmaing adduced evidence from which the jury could have found that she was discharged for preparing to report to the veterinary board her good-faith allegations of her employer's mistreatment of animals in his care. Unlike the plaintiffs in *Handam* and *Lansom*, Schmaing did not complain only to Koller (her employer) about what she considered to be his "unethical" and "unprofessional" conduct; rather, she also spoke with an attorney to prepare a complaint about her employer to the appropriate regulatory authority, the veterinary board. We conclude that Schmaing adduced sufficient proof from which the jury could find that she was discharged for fulfilling an important public duty. Accordingly, the trial court did not err in denying the motion for a directed verdict.[21]

## C. *Koller's asserted right of self-representation*

Koller contends that, if we sustain Schmaing's cross-appeal, then we must also reverse the judgment and remand for a new trial on the wrongful discharge counterclaim as to Koller individually, because "[i]t would be utterly inconsistent to deny Dr. Koller his right to self-representation but also make him a judgment debtor."

We pause to slice the Gordian knot of one final procedural complication.

Our preceding disposition of the parties' arguments regarding whether and how Koller is properly a judgment debtor on the counterclaim judgment in Schmaing's favor places this issue in an unusual posture. The only judgment from which Koller has appealed and raised assignments of error (including the assignment pertaining to preclusion of self-representation) is the third corrected general judgment—which we have vacated. Koller, quite reasonably, did not appeal from the original judgment, because he was not named as a judgment debtor in that judgment—though, as we have now concluded, he should have been so named.

---

[21] Given that conclusion, we express no opinion as to Schmaing's alternative contention pertaining to her refusal to engage in "defamation."

Given that juxtaposition, we could reason that Koller's assignment of error pertaining to preclusion of self-representation is not cognizable in this posture and, consequently, simply remand for entry of a judgment naming Koller as a judgment debtor—a judgment from which Koller could then appeal, assigning as error the trial court's preclusion of self-representation. Such a disposition would be "technically" defensible—and, perhaps, even "technically" correct—but it would be practically absurd.

Whenever possible, application of procedural rules should not thwart the practical and prudential purposes underlying those rules. Form should not trump function. Here, there is no question that the parties have a concrete and continuing dispute as to whether Koller individually is entitled to a new trial on the wrongful discharge counterclaim. Further, to defer determination of that dispute—which, certainly would be revived by way of yet another appeal following entry of judgment on remand—would pointlessly prolong already protracted litigation.

The best, pragmatic approach is to treat Koller's "preclusion of self-representation" assignment of error raised in the context of his appeal from the third corrected general judgment as functionally a cross-assignment of error proffered in response to Schmaing's cross-appeal from the original judgment. That characterization is appropriate in that Koller's assignment of error embodies a contention that, if Schmaing is correct (as she is) that Koller is a judgment debtor on the counterclaim, the proper appellate disposition is not to remand with instructions to enter a judgment naming Koller as a judgment debtor but, instead, to remand for a new trial as to Koller individually on the wrongful discharge counterclaim. *See* ORAP 5.57(2)(b) ("A cross-assignment of error is appropriate * * * [i]f the relief sought by the appellant were to be granted, respondent would desire reversal or modification of an intermediate ruling of the trial court."). We so proceed.

Koller, referring to his colloquy with the trial court on both August 17 and August 29, 2006, *see* 254 Or App at 121-23, contends that the court erroneously precluded him from representing himself. Koller's argument in that regard

is, frankly, conclusory. The sole source he invokes for his asserted entitlement of self-representation is ORS 9.320, which provides:

"Any action, suit, or proceeding may be prosecuted or defended by a party in person, or by attorney, except that the state or a corporation appears by attorney in all cases, unless otherwise specifically provided by law. Where a party appears by attorney, the written proceedings must be in the name of the attorney, who is the sole representative of the client of the attorney as between the client and the adverse party, except as provided in ORS 9.310."

Beyond that, Koller acknowledges that, because he continued, in fact, to be represented by counsel throughout the trial, he cannot demonstrate actual, discrete prejudice from the court's action. He does not, for example, identify any manner in which his *pro se* defense of the wrongful discharge counterclaim would have differed—*e.g.*, any evidence he would have proffered, any line of examination or cross- examination he would have pursued, any theory of defense he would have developed, or any argument he would have presented—from that presented by Ms. Koller on behalf of both Koller and Pet Clinic. Nor does he point to any differentiation between his interests and those of Pet Clinic with respect to that defense. Rather, he posits that requiring a showing of identifiable prejudice "would not make sense" because it would "effectively eviscerate" the right of self-representation.

Schmaing contends that Koller's argument regarding the court's denial of his first, August 17, request to represent himself is not preserved because, on that occasion, the trial court offered Koller "the opportunity to file a brief in aid of further consideration of the issue," to which Koller responded that he would file a brief by the next day—but never did and, indeed, did not pursue the matter further until August 29. *See* 254 Or App at 121-23. Schmaing contends that the trial court could reasonably have understood Koller's conduct (or inaction) in that regard to evince an abandonment of his initial request and, thus, a waiver of "any claim of error" based on the August 17 colloquy. Be that as it may, it is apparent—as Schmaing

concedes—that Koller *did* preserve error with respect to the denial of his request on August 29.

On the merits, Schmaing does not dispute that ORS 9.320 confers at least an abstract entitlement to self-representation. However, Schmaing contends that that entitlement is not absolute and is qualified by practical and prudential considerations, including the timing of the party's request to proceed *pro se* and potential disruption of the judicial process. In that regard, Schmaing asserts that the trial court's ruling "was based on appropriate considerations and was entirely correct," because "Koller's request was too little and too late," and "the trial court was well within its discretion to prevent the kind of disruption that would flow from Koller's late demand" to represent himself. In any event, Schmaing argues, ORS 19.415(2) requires a showing that the alleged error was prejudicial.[22]

We conclude that, in the August 29 colloquy, the trial court did erroneously preclude Koller from representing himself. The sole justification the court expressed at that time was that Koller personally was not a party to the litigation (specifically, with respect to the counterclaims)—a rationale that was incorrect. Further, to the extent that the trial court subsequently—indeed, nearly two years later, in the context of its order allowing ORCP 71 C relief—proffered additional reasons for its ruling, *e.g.*, potential

---

[22] The parties do not cite, nor have we discovered, any Oregon appellate case that addresses the denial of the statutory right of self-representation for a civil litigant under ORS 9.320. To be sure, there is an abundance of authority in the criminal realm, including, most prominently, the *"Meyrick"* genre of cases, predicated on *State v. Meyrick*, 313 Or 125, 831 P2d 666 (1992), pertaining to advising criminal defendants regarding waiver of the constitutional right of representation by counsel in criminal proceedings. Only one of those cases, *State v. Davis*, 110 Or App 358, 822 P2d 736 (1991)—which was predicated, in part, on our decision in *Meyrick*, 106 Or App 682, 809 P2d 710 (1991), *rev'd on other grounds*, 313 Or 125, 831 P2d 666 (1992)—appears to address a denial of a represented criminal defendant's request (failing the appointment of substituted counsel) to represent himself. In *Davis*, we observed that "[a] criminal defendant has a constitutional right to waive counsel and to represent himself[,]" but noted that "that right is not absolute" and could be qualified by, *inter alia*, concerns about disruption of the judicial process. 110 Or App at 360. We concluded that the trial court's denial of the defendant's request constituted reversible error. *Id.* at 361; *see also State v. Verna*, 9 Or App 620, 624, 498 P2d 793 (1972) ("A defendant in a criminal case has the constitutional right not only to be represented by counsel, but also, if he so , to represent himself.").

disruption of proceedings, those concerns are, with respect, not substantiated in the appellate record.

But not all error is reversible error. Rather, ORS 19.415(2) provides that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party." *See Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 174, 61 P3d 928 (2003) ("In every case, the appellate courts must adhere to the limitation of ORS 19.415(2) and reverse or modify a judgment only if it can be determined from the record that the error 'substantially affect[ed] the rights of a party.'"); *see also id.* at 173-74 (explaining that ORS 19.415(2) "places the burden to make a record that demonstrates prejudicial error on whichever party loses in the trial court and then seeks reversal or modification of the judgment on appeal").

We agree with Koller that the statutory right of self-representation is an important right. But we cannot (at least in civil litigation) endorse his proposition that, "[a] party who is erroneously forced to use a retained attorney should not then have to show prejudice in order to obtain a reversal of the resulting judgment."

It is tempting, to be sure, to embrace that proposition. But however attractive, and however phrased, it reduces to structural error, a construct that is inapposite under Oregon law. *See Ryan v. Palmateer*, 338 Or 278, 295, 108 P3d 1127, *cert den*, 546 US 874 (2005) ("[S]tructural error is a doctrine that originated in federal criminal cases and * * * has not been adopted by this court as an aspect of Oregon law[.]"); *State v. Arreola*, 250 Or App 496, 501, 281 P3d 634 (2012) ("Oregon courts do not recognize structural error, so the erroneous admission of a medical diagnosis does not necessarily require reversal in every case."); *State v. Wilson*, 216 Or App 226, 232, 173 P3d 150 (2007), *rev den*, 344 Or 391 (2008), *adh'd to as modified on recons*, 228 Or App 365, 208 P3d 523 (2009) ("[T]he Oregon Supreme Court has repeatedly admonished that the concept of 'structural error' is inapposite to Oregon law."); *see also Hayward v. Belleque*, 248 Or App 141, 165, 273 P3d 926 (2012) ("The court will not presume prejudice in the absence of proof.").

Because Koller failed to establish cognizable prejudice resulting from the trial court's ruling, that ruling does

not warrant a remand for a new trial on the wrongful discharge counterclaim against Koller individually.

## III. CONCLUSION

The trial court lacked jurisdiction under ORCP 71 C to enter the third corrected general judgment during the pendency of the appeal from the original judgment. The trial court erred in failing to designate Koller as a judgment debtor on the wrongful discharge counterclaim in the original judgment. The trial court correctly denied the motion for a directed verdict against Schmaing's wrongful discharge counterclaim. The trial court's denial of Koller's request to proceed *pro se* was not reversible error.

In A139232, affirmed. In A136633, on appeal of third corrected general judgment, vacated; on appeal and cross-appeal of original general judgment, affirmed on appeal and remanded on cross-appeal with instructions to designate Koller as an additional judgment debtor on the wrongful discharge counterclaim.